STATE of Iowa, Appellant,

v.

Kim KREBS, Appellee.

No. 96–196.

Supreme Court of Iowa.

April 23, 1997.

Joseph G. Bertogli, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Mary E. Richards, County Attorney, and Molly Frazer, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

PER CURIAM.

Kim Krebs appeals from his conviction of first-offense operating while intoxicated (OWI), in violation of Iowa Code section 321J.2 (1995). He raises two issues on appeal. Krebs argues his conviction for OWI following an administrative revocation of his driver's license for a chemical test failure violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which prohibits multiple punishments for the same offense. He claims the 1995 amendments to the revocation statutes, which implement mandatory periods of ineligibility for temporary licenses, constitute punishment. *See* Iowa Code §§ 321J.9(2), 321J.12(2) (1997).[1] Second, Krebs asserts his statutory right to contact a family member under Iowa Code section 804.20 (1995) was violated when the peace officer did not allow him to contact his wife after receiving a page during field sobriety tests. We reject both contentions and affirm.

## I. *Factual Background*

On September 23, 1995, at approximately 2:22 a.m., deputy Stark saw Kim Krebs driving a pickup truck without headlights. Deputy Stark had contact with Krebs earlier that morning, which raised his concern about Krebs' sobriety. After following him a short distance, deputy Stark pulled him over. Based upon his observations and the prior contact, deputy Stark requested Krebs to perform field sobriety tests. During field sobriety testing, Krebs received a motion page[2] from his wife, and requested that he be allowed to call her. Deputy Stark responded that he could call his wife at the conclusion of the matter. Following the field sobriety tests, Krebs was arrested and transported to the jail for processing. He con-

sented to a breath test, and the result was a .117 alcohol concentration. He was charged with first-offense OWI.

Krebs' driver's license was subsequently revoked pursuant to section 321J.12 for a test failure. He filed a motion to dismiss the criminal prosecution based upon violation of the Double Jeopardy Clause. The court overruled his motion.

Krebs also filed a motion to suppress the results of the intoxilyzer test because he was denied his right to telephone his wife pursuant to section 804.20. He argued he made the request after he was handcuffed, and again at the jail. Following a hearing, the trial court overruled the motion. It determined Krebs only made one request to call his wife, and that request was made during field sobriety testing, rather than after his arrest. The trial court believed section 804.20 was implicated because Krebs was placed in custody or otherwise restrained at the time of the initial traffic stop. However, the court concluded the purpose of Krebs' request was to respond to his wife's page, not to seek her advice about the traffic stop.

## II. *Double Jeopardy Violation*

■ Krebs argues his criminal prosecution for OWI is barred by the Double Jeopardy Clause because his driver's license was revoked by the Iowa Department of Transportation for a test failure. He requests that we overrule *State v. Kocher*, 542 N.W.2d 556 (Iowa 1996) (holding a test failure revocation does not constitute punishment for double jeopardy purposes), because it supposedly misinterprets United States Supreme Court double jeopardy precedent. Secondly, he contends *Kocher* did not address the July 1, 1995 amendments to the revocation statutes, which provide various "hard suspension" periods, or mandatory periods in which a person cannot obtain a temporary restricted license. Because Krebs raises a constitutional

---

1. Although Krebs cites section 321J.4(1) and (2) in his brief to support his double jeopardy argument, the relevant sections appear to be 321J.9(2) and 321J.12(2). Section 321J.4 applies only if the defendant was convicted of a chapter 321J violation *prior to* the revocation of his operating privileges. *See* Iowa Code § 321J.4 (1997).

2. The record indicates Krebs was wearing a pager on his belt, and it was set to alert him of a page by vibrating rather than emitting a tone.

claim, our review is de novo. *State v. Funke*, 531 N.W.2d 124, 126 (Iowa 1995).

■ The Double Jeopardy Clause protects persons from multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969); *State v. Butler*, 505 N.W.2d 806, 807 (Iowa 1993). This court has previously determined that the license revocation scheme under implied consent can fairly be characterized as remedial, and that revocations for test failures or refusals to test under sections 321J.12 and 321J.9 do not bar subsequent OWI prosecutions. *State v. Vogel*, 548 N.W.2d 584, 587 (Iowa 1996); *Kocher*, 542 N.W.2d at 558. We determined such license revocations do not constitute punishment implicating double jeopardy protection, but promote remedial measures to reduce the holocaust on our highways caused in part by intoxicated drivers, and we reaffirmed a long line of precedent supporting this view. *See Vogel*, 548 N.W.2d at 586–87, and cases cited therein; *Kocher*, 542 N.W.2d at 558, and cases cited therein. We decline Krebs' invitation to overrule these cases.

■ Under the 1995 amendments to the temporary restricted license requirements, the legislature now requires an individual to serve a hard suspension—a person must wait a certain amount of time before becoming eligible for a temporary restricted license. *See* Iowa Code §§ 321J.9(2), 321J.12(2) (1997). The waiting period is either thirty days, ninety days, or one year depending upon whether the individual consented or refused chemical testing, and whether the individual had a prior chapter 321J revocation within the previous six years.[3] *Id.*

In *State v. Vogel*, we rejected the defendant's argument that the availability of a temporary restricted license undermined the remedial purpose of the revocation statute. 548 N.W.2d at 587. The issuance of temporary restricted licenses is "a matter of legislative grace because driving is a privilege granted by the state, not a constitutional

right." *Id.* Legislation imposing further restrictions on eligibility for temporary restricted licenses furthers, rather than defeats, the remedial purpose of removing dangerous and irresponsible drivers from the roadway.

■ We are not persuaded by Krebs' additional argument that the loss of employment resulting from hard suspension is punitive.[4] It is merely an incidental effect of the overall legislative scheme of protecting the motoring public. *See Kocher*, 542 N.W.2d at 558. Although a remedial sanction may carry "the sting of punishment," whether the sanction is remedial or punitive should be determined by the purpose it actually serves, not from the defendant's perspective. *United States v. Halper*, 490 U.S. 435, 447 n. 7, 109 S.Ct. 1892, 1901 n. 7, 104 L.Ed.2d 487, 501 n. 7 (1989); *Kocher*, 542 N.W.2d at 557. The district court was correct in so ruling.

### III. *Statutory Right to Contact a Family Member*

■ Krebs next contends he was denied his statutory right to contact his wife because his request made during field sobriety testing was not honored by deputy Stark. He argues the trial court erred in considering his reason or purpose for wanting to call his wife. He contends the purpose of the request is not determinative of the right afforded under section 804.20.

■ Our review of the interpretation of section 804.20 is on error. *See State v. Frake*, 450 N.W.2d 817, 818 (Iowa 1990). We will uphold the trial court's ruling on a motion to suppress if there is substantial evidence to support the court's findings of fact. *Id.* Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings. *Id.*

Iowa Code section 804.20 states in pertinent part:

---

3. For an individual under the age of twenty-one who submits to a chemical test which indicates an alcohol concentration of .10 or more, the hard suspension period is sixty days. *See* Iowa Code § 321J.12(2) (1997).

4. Although Krebs raises this argument, there is no evidence in the record indicating he lost his employment due to the waiting period for a temporary restricted license.

Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney.

■■ As we stated in *State v. Vietor*, 261 N.W.2d 828, 832 (Iowa 1978), this statutory right is limited for persons arrested for OWI. If this right is violated, the exclusionary rule applies, and any evidence of chemical testing must be suppressed. *Vietor*, 261 N.W.2d at 832. The right to contact a family member under section 804.20 is neither more nor less qualified than the right to contact an attorney. *State v. McAteer*, 290 N.W.2d 924, 925 (Iowa 1980).

Krebs' argument concerning section 804.20 is defeated by the record before us. The district court found Krebs made the request to telephone his wife during the field sobriety tests. We believe section 804.20 was not implicated at the time of Krebs' request because he was not in custody or otherwise sufficiently restrained.

Field sobriety tests are used by peace officers to determine whether there are reasonable grounds to believe a person is intoxicated. These tests are part of an officer's investigation to determine if a criminal offense has occurred. At this point in the investigation, the defendant is merely being detained by the officer, not restrained of his liberty. *See Berkemer v. McCarty*, 468 U.S. 420, 441–42, 104 S.Ct. 3138, 3151–52, 82 L.Ed.2d 317, 335–36 (1984) (requesting motorist to perform field sobriety tests was not the functional equivalent of formal arrest requiring *Miranda*); *In re S.C.S.*, 454 N.W.2d 810, 813–14 (Iowa 1990) (holding juvenile was not "in custody" for purposes of *Miranda* or the juvenile code during field sobriety testing). Although section 804.20 may be implicated in a situation short of a

formal arrest, we do not believe the language "restrained of the person's liberty for any reason whatever" extends to the investigatory portion of a traffic stop. To interpret the statute otherwise would thwart all investigations upon a person's request to contact a family member or an attorney. We do not believe the legislature intended such an impediment in enacting the protections of the statute. Our prior cases have explained the purpose of section 804.20 is "to give a person held in custody the right to consult with or have the advice and aid of members of his family in regard to his own troubles." *State v. Tornquist*, 254 Iowa 1135, 1151, 120 N.W.2d 483, 493 (1963); *see also State v. Craney*, 347 N.W.2d 668, 679 (Iowa 1984) (purpose of section 804.20 is to enable the person to arrange for legal consultation and assistance).

At the time Krebs made his request, he was not under arrest or in custody, and deputy Stark had not made a decision as to whether Krebs was in violation of chapter 321J.[5] Therefore, section 804.20 was not implicated. Because Krebs did not make any requests to call his wife *after* his arrest, he cannot rely on section 804.20 for reversal.

### IV. *Conclusion*

The 1995 legislative amendments to chapter 321J requiring a person to wait a specified period of time before obtaining a temporary restricted license do not constitute punishment for purposes of the Double Jeopardy Clause. The license revocation precipitated by Krebs' test failure in accordance with these new amendments may be fairly characterized as remedial. We also find section 804.20 was not implicated at the time Krebs requested to call his wife. Accordingly, we affirm the conviction for first-offense OWI.

**AFFIRMED.**

---

5.  Deputy Stark testified that if Krebs had passed the field sobriety tests, he would not have been arrested for OWI.