STATE of Iowa, Appellee,

v.

Joshua Paul MOOREHEAD, Appellant.

No. 03–1904.

Supreme Court of Iowa.

April 1, 2005.

Rehearing Denied July 11, 2005.

John P. Lander of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason City, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Paul L. Martin, County Attorney, and William Hoekstra, Assistant County Attorney, for appellee.

STREIT, Justice.

Mother knows best. While detained in the back of a patrol car on suspicion of drunk driving, a young man asked the police if he could talk to his mother about his predicament. He now asks us to overturn his conviction because the police did not comply with his request. We reverse and remand for further proceedings.

## I. Facts

In the wee hours of April 20, 2003, a Cerro Gordo County deputy sheriff clocked a car speeding on a highway in Mason City. The deputy gave chase but the car did not immediately stop. The car swerved over the center line twice before eventually coming to a halt on the wrong side of an adjacent residential street.

The deputy spoke to the driver, Joshua Paul Moorehead. Moorehead was eighteen years old, living at home with his parents, and driving his mother's car. The deputy smelled alcohol and noticed Moorehead's speech was slurred. Moorehead's eyes were glazed but not bloodshot. Moorehead initially denied having anything to drink, but later admitted he had drunk one beer.

The deputy administered three field sobriety tests for drunkenness. Moorehead failed them all. While taking one of these tests, Moorehead said he did not know if he could pass the test "if I was sober." The deputy also asked Moorehead to take a preliminary breath test, and Moorehead complied. Based upon his observations, the deputy placed Moorehead in the deputy's vehicle.

While Moorehead was sitting in the back of the police car, the deputy and Moorehead had the following videotaped conversation:

DEPUTY: Well, Josh, you've been drinking a lot more than one beer tonight. By all the tests that I've done, you're definitely over the legal limit.... I'm going to have to take you with me [to the police station] to do one more test.

MOOREHEAD: That's fine, sir.

DEPUTY: What do you want done with the car?

MOOREHEAD: Um....

DEPUTY: Do you [have] some parents that can get it or anything? That can come get you after awhile?

(In an inaudible portion of the tape, at this point Moorehead presumably indicates the deputy should contact his mother.)

MOOREHEAD: Would it be possible for me to talk to my Mom when you call her to come pick it up?

DEPUTY: Not right now, because I just have to call my dispatcher and have her call her.

MOOREHEAD: All right, that's fine....

DEPUTY: I'll probably have to wait here until she comes anyway....

MOOREHEAD: Yeah, that's fine.

The deputy contacted his dispatcher. The dispatcher called Moorehead's parents.

Moorehead's parents arrived at the scene of their son's detention. Moorehead's mother asked the deputy if she could speak with her son. The deputy told her he had to take Moorehead to the police station first and the dispatcher would call her when she could pick him up.

By all accounts, however, Moorehead's mother *did* have a brief encounter with her son at the scene through the window of the patrol car. (It is unclear from the record whether the window was up or down.) For approximately thirty seconds to one minute, Moorehead's mother yelled at her son. She told Moorehead he was grounded, and would remain grounded for a long period of time. Moorehead's father said his wife "wasn't very happy" and "kind of chewed on him a little bit." Moorehead testified his exchange with his mother was not a "conversation," just his mom yelling at him through a closed window. Moorehead did not get in a word. Moorehead's parents took the car home and waited for a call from the police.

The deputy took Moorehead to the police station. The deputy read Moorehead the *Miranda* warnings and the implied consent advisory. Moorehead asked the deputy whether he should take the breath test. The deputy replied it was entirely Moorehead's decision to make. Moorehead never asked to call his mother again, or, for that matter, anyone else. Moorehead testified he still wanted to speak to his mother but did not ask to do so again because he had already asked and therefore assumed the deputy would tell him when he could do so. Moorehead took the breath test and blew a .182.

After the test, the deputy gave Moorehead a list of written questions. On the questionnaire Moorehead admitted he had drunk not one, but three cans of Busch Light—"the only kind of beer I touch."

Bizarrely, he also indicated he wished he had a glass eye and diabetes.

While filling out the questionnaire Moorehead stood up. The deputy asked Moorehead if he was okay. Moorehead replied "I'm drunk as hell."

## II. Prior Proceedings

The county attorney charged Moorehead with first-offense OWI. *See* Iowa Code § 321J.2 (2001). Before trial Moorehead moved to suppress "any and all evidence obtained from this matter including results of breath testing and ... answers to any interrogation which occurred without counsel." Moorehead argued the deputy had denied him his statutory right to contact a family member. *See id.* § 804.20. The district court denied Moorehead's motion. The court concluded Moorehead made his request at the scene of the stop (as opposed to the police station) and therefore the statute did not apply.

Moorehead waived his right to a jury and stipulated to a bench trial on the minutes of testimony, as well as other agreed-upon evidence. Moorehead renewed his suppression argument; the trial court again denied the motion. The court found Moorehead guilty. The trial court noted Moorehead had a breath alcohol level of .182 and "exhibited observable physical symptomatology of [impairment]." The court did not expressly rely upon any of Moorehead's incriminating statements in reaching its verdict.

Moorehead appealed. Although the court of appeals found the police had violated Iowa Code section 804.20, it affirmed on harmless error grounds. The court cited "overwhelming evidence" of Moorehead's guilt, including Moorehead's admission that he was "drunk as hell."

Moorehead sought further review, which we granted. The primary issues before us

are the same as those in the court of appeals, namely: (1) Did the district court err when it held Moorehead did not sufficiently invoke his statutory right to contact a family member when he asked to talk to his mother at the stop scene? and (2) If the district court did err, was admission of the breath test result harmless?

## III. Principles of Review

██ We review the district court's interpretation of Iowa Code section 804.20 for errors at law. *State v. Krebs*, 562 N.W.2d 423, 425 (Iowa 1997) (citing *State v. Frake*, 450 N.W.2d 817, 818 (Iowa 1990)). If the district court properly applied the law and there is substantial evidence to support its findings of fact, we will uphold its ruling on a motion to suppress. *See Krebs*, 562 N.W.2d at 425. "Evidence is substantial when a reasonable mind would accept it as adequate to reach the same findings." *Id.*

## IV. Iowa Code § 804.20

██ Iowa Code section 804.20 is Iowa's statutory right to call an attorney or a family member. It provides:

> Any peace officer ... having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both.... If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody.... A violation of this section shall constitute a simple misdemeanor.

Iowa Code § 804.20. In previous cases we have held section 804.20 does not require a police officer to inform a defendant of his right to contact counsel or a family member. *See, e.g., State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005); *State v. Stroud*, 314 N.W.2d 437, 439 (Iowa 1982). An officer may not, however, tell a defendant he does not have such a right, and once the right is invoked the officer must give the defendant the opportunity to call or consult with a family member or attorney. *See State v. Vietor*, 261 N.W.2d 828, 831 (Iowa 1978).

The first issue in this case is primarily a matter of statutory interpretation. We must decide whether Moorehead's Iowa Code section 804.20 rights attached when he made his request at the scene of the stop. In resolving this issue, we consider two matters: whether Moorehead's request was (1) properly timed and (2) sufficiently voiced.

### A. Timing of Request

██ We conclude Moorehead's request was properly timed. Moorehead was "restrained of [his] liberty" as he sat in the back of the patrol car. *See Krebs*, 562 N.W.2d at 426 (recognizing that "section 804.20 may be implicated in a situation short of a formal arrest" so long as defendant was restrained of his liberty). Moorehead had already failed three field sobriety tests, a preliminary breath test, arguably made an incriminating statement, and displayed many symptoms of drunkenness. The deputy told Moorehead he was taking him in for one more test. The investigatory stage of the stop had ended. *Cf. id.* (holding request to call wife *during* field sobriety tests *not* within purview of Iowa Code § 804.20). The deputy himself testified that he considered Moorehead "technically" under arrest after he failed the field sobriety tests. Moorehead was not going anywhere. *Cf. State v. Countryman*, 572 N.W.2d 553, 557–58 (Iowa 1997). He was restrained of his liberty, and therefore his request fell within the timeframe of the statute. Like the court of

appeals, we can find nothing in the plain language of Iowa Code section 804.20 that requires the defendant make his request for counsel or a family member at the ultimate place of detention. The district court erred when it ruled otherwise.

### B. Sufficiency of Request

The primary thrust of the State's argument before the court of appeals did not concern the timing of Moorehead's request, but rather its sufficiency. The State argued the district court's ruling should be affirmed because there was substantial evidence in the record to conclude Moorehead's request to talk to his mother was not an unequivocal request to ask his mother *for advice* about his predicament, but instead an inquiry about what to do with the car. Lacking a clear request to seek advice, the State submitted Moorehead needed to ask for his mother again at the police station if he wanted to invoke the statute. The court of appeals rejected the State's argument.

■ We agree with the court of appeals. In analyzing the sufficiency of Moorehead's request, we apply "an objective consideration of the statements and conduct of the arrestee and peace officer, as well as the surrounding circumstances." *See Bromeland v. Iowa Dep't of Transp.*, 562 N.W.2d 624, 626 (Iowa 1997); *accord State v. Bowers*, 661 N.W.2d 536, 542 (Iowa 2003) (section 804.20 claim "must be decided in the context of the situation" defendant was in at the time of the request). Although Moorehead's request to talk to his mother arose in the context of a

discussion about the disposition of his mother's car, Moorehead specifically, separately, and unequivocally requested to talk to his mother. Moorehead's request was sufficient to invoke the statute. As a consequence, the police were obligated to honor Moorehead's request "without unnecessary delay after arrival at the place of detention," in this case the police station. Iowa Code § 804.20. Because the police did not do so,[1] they violated Moorehead's statutory right to contact a family member.

### V. Harmless Error

■ Consistent with our decision in *State v. Vietor*, 261 N.W.2d 828 (Iowa 1978), the court of appeals ruled the district court should have suppressed the result of Moorehead's breath test. Nonetheless the court of appeals affirmed on harmless error grounds. The court found there was "overwhelming evidence" Moorehead was guilty and therefore any error in admitting the test result was harmless. Moorehead was speeding, did not immediately stop for the deputy, swerved over the center line twice, had an odor of alcohol, slurred speech, and glazed eyes, failed all field sobriety tests, and admitted he was "drunk as hell" at the station.

■ In cases of nonconstitutional error, reversal is required if it appears the complaining party has suffered a miscarriage of justice or his rights have been injuriously affected. *See, e.g., State v. Henderson*, 696 N.W.2d 5, 12 (Iowa 2005); *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa

---

1. We are not asked to decide whether the yelling incident preempted law enforcements obligation to permit Moorehead to talk with his mother after arriving at the police station. We note, however, that this is not a case where the police undertook measures to put the defendant in contact with a family member only to have the family member yell, hang up, or otherwise refuse to give advice and comfort. *Cf. Bromeland*, 562 N.W.2d at 626 (holding statutory right to contact attorney not violated when officer tried to put arrestee in contact with attorney but attorney was unavailable). Here the deputy did not honor Moorehead's request and kept his mother from him.

2004); *State v. Wixom*, 599 N.W.2d 481, 484 (Iowa Ct.App.1999). We presume prejudice unless the record affirmatively establishes otherwise. *Henderson*, 696 N.W.2d at 12; *Sullivan*, 679 N.W.2d at 30. A breath test result is important evidence in prosecutions for drunk driving. *Cf. Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 72 (Iowa 2004) (remarking in dramshop action that "[e]vidence of a person's blood-alcohol level, if available, is important evidence of intoxication"). This is especially true when the breath test is high—in this case nearly twice the legal limit. It also appears the test result played a central role in the district court's decision. Because this matter was tried to the court, we have a written exposition of the fact finder's reasoning in the verdict. Moorehead's high breath test result is the very first fact cited as evidence of guilt. Mindful of a defendant's right to a fair trial and just application of our rules, *see Wixom*, 599 N.W.2d at 484, it cannot be fairly said that the breath test result did not injuriously affect Moorehead's rights. The district court's error in admitting this evidence clearly prejudiced Moorehead. Admission of the breath test result into evidence was therefore not harmless error. We vacate the decision of the court of appeals and remand for a new trial without use of the breath test result.

## VI. Use of Incriminating Statement on Remand

In determining that introduction of the breath test result was harmless error, the court of appeals relied upon Moorehead's admission at the police station that he was "drunk as hell." On further review, Moorehead argues the *Vietor* exclusionary rule should apply to this statement and asks that it be suppressed on remand. We remand for a hearing to decide whether the statement was made spontaneously.

By its terms, Iowa Code section 804.20 does not include an exclusionary rule. Instead, violation of the statute is a simple misdemeanor. Iowa Code § 804.20. In an early case interpreting section 804.20, we simply read the statute as written and declined to create an exclusionary rule in the absence of a legislative directive to do so. *See State v. Heisdorffer*, 164 N.W.2d 173, 177 (Iowa 1969). Our decision in that early case is consistent with the general rule, recognized in our cases, that application of an exclusionary rule is ordinarily only warranted if explicitly expressed in the statute. *See State v. Buenaventura*, 660 N.W.2d 38, 46 (Iowa 2003) (equating treaty with statute and for this reason declining to create exclusionary rule absent specific reference). It is also important to remember that Iowa Code section 804.20 was enacted in 1959 and thus predates much of the modern federal exclusionary rule jurisprudence. 1959 Iowa Acts ch. 373, § 1; *see, e.g., Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961) (a landmark exclusionary rule decision). *But see McNabb v. United States*, 318 U.S. 332, 345, 63 S.Ct. 608, 615, 87 L.Ed. 819, 826 (1943) (when construing a federal statute, implied exclusionary rule mandates incriminating statement obtained during an unlawful detention is inadmissible).

More than twenty-five years ago we changed course and overruled *Heisdorffer*. In *State v. Vietor*, a man suspected of drunk driving asked to call an attorney but was denied his statutory right to do so. 261 N.W.2d at 830. The suspect ultimately refused to take a chemical test absent consultation with the attorney. *Id.* We overruled *Heisdorffer* and held "evidence of [the suspect's] refusal to take [the] chemical test shall be inadmissible at a later criminal trial." *Id.* at 832. Our holding in *Vietor* may be reconciled with the general presumption against implied statu-

tory exclusionary rules on the theory that an exclusionary rule is warranted for violations of those statutes, including section 804.20, which involve fundamental rights or have constitutional overtones. *See, e.g., Buenaventura,* 660 N.W.2d at 46 (indicating exclusionary rule may be warranted when statute involves a "fundamental right"); *State v. Kjos,* 524 N.W.2d 195, 198 (Iowa 1994) (Neuman, J., dissenting) ("Such an extraordinary remedy should be reserved, I believe, for situations evidencing bad faith by the State's agents or violation of a statute with constitutional overtones, as in *Vietor.*"); *cf. Armenta v. Superior Ct.,* 61 Cal.App.3d 584, 132 Cal. Rptr. 586, 592 (1976) (requiring exclusion for "transgression of statutes embodying constitutional standards").

In *State v. McAteer,* 290 N.W.2d 924 (Iowa 1980), another drunk driving case, we expounded further upon our holding in *Vietor.* *McAteer* was arguably distinguishable from *Vietor* because *McAteer* involved a request to speak with a family member, not an attorney. The State attempted to avoid the exclusionary rule on this basis. We held:

> *We believe the right, given by section 804.20, to communicate with a family member is neither more nor less qualified than the right given to communicate with an attorney.* We know of no reason why the exclusionary rule should be applied to a violation of one right and not to that of the other. The trial court was right in suppressing the evidence.

*McAteer,* 290 N.W.2d at 925 (emphasis added). In *McAteer* the suppressed evidence included a breath test result, as opposed to testimony the defendant had not taken the test. *Id.* at 924.

In a generation's worth of cases decided after *Vietor* and *McAteer* we have not explicitly decided whether the *Vietor* exclusionary rule bars introduction of evidence not relating to a breath test but likewise obtained after a violation of Iowa Code section 804.20, such as Moorehead's post-test-result statement that he was "drunk as hell." *See Bowers,* 661 N.W.2d at 541–42. *But see* 1981 Iowa Op. Att'y Gen. 6–1(L) (remarking shortly after *Vietor* and *McAteer* were decided that "evidence obtained in violation of the right is subject to exclusion in a subsequent criminal proceeding"). We see no reason why the *Vietor* exclusionary rule should now be limited to statements regarding breath tests. Nothing in *Vietor* or our subsequent cases specifically restricts the exclusionary rule to such evidence. This is not surprising or without justification. On its face Iowa Code section 804.20 is a statute of general application. There is no indication in the statute that it is only concerned with the implied consent doctrine or the administration of breath tests. *But see Krebs,* 562 N.W.2d at 426 ("As we stated in [*Vietor* ], this statutory right is limited for persons arrested for OWI."). Nothing in *Vietor* or *McAteer* so holds.

The State proposes that in cases such as this one we should let the jury decide whether the incriminating statement was made voluntarily. *See, e.g., Tornquist,* 254 Iowa 1135, 1150, 120 N.W.2d 483, 492 (1963) (in pre-*Vietor* case, opining in dictum that such an instruction would be warranted); *State v. Cameron,* 254 Iowa 505, 511, 117 N.W.2d 816, 819 (1962) (same), *overruled by Bowers,* 661 N.W.2d at 543. On this theory, denial of a defendant's section 804.20 rights would not always result in the exclusion of a confession elicited in consequence of that violation; instead the fact the defendant's section 804.20 rights were violated would be but one factor for the jury to consider. The State proposes we craft a jury instruction to this effect.

We decline to do so. The State's proposal no longer encapsulates the proper roles of judge and jury in contemporary

criminal procedure. Indeed, we recently disapproved of such an instruction. *Bowers*, 661 N.W.2d at 543, *overruling State v. Cameron*, 254 Iowa at 511, 117 N.W.2d at 819. The case the State primarily relies on, *Tornquist*, 254 Iowa at 1150, 120 N.W.2d at 492, cites *Cameron* for support. Having overruled *Cameron* in *Bowers* we now likewise disavow our dictum in *Tornquist*. A jury instruction on voluntariness is simply not consistent with our present practice and precedents. *Bowers*, 661 N.W.2d at 543.

■ In the alternative, the State argues suppression of Moorehead's incriminating statement is not appropriate in this case because the deputy read Moorehead his *Miranda* rights before he confessed he was "drunk as hell" and argues these warnings should rectify any concerns about the voluntariness of his statement. *Miranda* warnings, however, do not address the right to contact *a family member*. We reiterate the right to contact a family member under section 804.20 is neither more nor less qualified than the right to contact an attorney. *McAteer*, 290 N.W.2d at 925.

■ Lastly, the State contends the "I'm drunk as hell" statement should be admissible because it was spontaneous. We agree to the extent that *if* the statement was spontaneous, the *Vietor* exclusionary rule should not apply. *Cf. State v. Turner*, 630 N.W.2d 601, 608 (Iowa 2001) (under *Miranda* doctrine, statements made freely, voluntarily, and spontaneously are admissible); *State v. Brown*, 176 N.W.2d 180, 182 (Iowa 1970) (same). Because the district court did not decide whether Moorehead's statement was spontaneous, however, we decline to rule on this issue for the first time on appeal. *See Sager v. Farm Bureau Mut. Ins. Co.*, 680 N.W.2d 8, 15 (Iowa 2004).

On remand, the district court shall decide whether the "I'm drunk as hell" statement was spontaneous. If the court finds it was spontaneous, the statement should be admitted into evidence because the exclusion of such statements is not implicated by a violation of Iowa Code section 804.20. If the court finds it was not spontaneous, the statement should be suppressed because it was obtained after "unnecessary delay"—in this case after a breath test was administered. Iowa Code § 804.20; *see Vietor*, 261 N.W.2d at 832 (unnecessary delay when defendant not afforded phone call by the time breath test was administered).

Moorehead also argues that with the statement suppressed there would be insufficient evidence to convict him. For obvious reasons, we need not address this claim.

## VII. Conclusion

Law enforcement violated Moorehead's statutory right to talk with his mother. The district court erred in denying his motion to suppress his breath test result. We cannot say this error was harmless, and therefore we reverse and remand for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except CARTER and TERNUS, JJ., who concur in part and dissent in part.

CARTER, Justice (concurring in part and dissenting in part).

I concur in the decision to suppress the results of defendant's breath test based on our decision in *State v. McAteer*, 290 N.W.2d 924, 925 (Iowa 1980). I dissent from that portion of the opinion that extends the suppression remedy applied to chemical test results in *McAteer and State v. Vietor*, 261 N.W.2d 828, 832 (Iowa 1978),

to matters of custodial interrogation. The constitutional protections afforded to persons in police custody provide an adequate safeguard against improper police interrogation. Consequently, the circumstances do not warrant the additional remedy that the court now derives from Iowa statutory law in the absence of a clear indication that the legislature intended that result.[2]

TERNUS, J., joins this concurrence in part and dissent in part.

**2.** The majority of the court is incorrect in suggesting that it would be inconsistent to provide a suppression-of-evidence remedy for violations of the statute when chemical testing is involved and failing to provide such a remedy with respect to interrogation. There would be no inconsistency in doing that. Although the constitutional protections, including *Miranda* warnings, give adequate protection against unwarranted police interrogation, those safeguards are of little assistance to an arrested party with regard to the decision that must be made with respect to chemical testing. Denial of the statutory right to outside assistance in making the latter decision may only be vindicated by suppression of the test results.