# IN THE COURT OF APPEALS OF IOWA

No. 15-1737
Filed June 15, 2016

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**AMANDA IONE BRAINERD DELZER,**
 Defendant-Appellant.
_____

  Appeal from the Iowa District Court for Winnebago County, Christopher C. Foy (motion to suppress) and Gregg R. Rosenbladt (trial), Judges.

  Defendant appeals her conviction for operating while intoxicated, third offense. **AFFIRMED.**

  Shaun A. Thompson of Newman, Thompson & Gray, P.C., Forest City, for appellant.

  Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

  Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Defendant Amanda Delzer appeals her conviction for operating while intoxicated (OWI), third offense. We find the decision of the district court denying Delzer's motion to suppress to be correct based upon Iowa Code section 804.20 (2013), as there was no restraint of liberty when she requested to call an attorney. We further find Delzer's Fifth Amendment rights were not violated as no custodial interrogation took place without being informed of her *Miranda* rights. We affirm Delzer's conviction.

## I.  Background Facts & Proceedings

On December 27, 2014, at about 2:00 a.m., Deputy Brian Plath of the Winnebago County Sheriff's Office was on patrol in Forest City when he noticed a vehicle without its headlights on at a stop sign. It was snowing quite heavily at the time. As the vehicle started from the stop, it fishtailed and hit the curb on the opposite side of the road. After Deputy Plath stopped the vehicle, he noticed a strong odor of an alcoholic beverage. The driver, Delzer, had watery, bloodshot eyes and slurred speech. She admitted she had been drinking earlier in the evening. There was an open container of beer in the vehicle.

Due to the weather conditions, which Deputy Plath described as a blizzard, he told Delzer they would go to the sheriff's department for field sobriety tests. He asked, "Fair enough?" and Delzer nodded her head. He asked Delzer to lock her car, and went with her while she did so, stating, "We'll go to the jail," which was the same building as the sheriff's department. Delzer sat in the front seat of the squad car while they traveled about four blocks to the sheriff's department.

Deputy Plath took Delzer to the booking room at the sheriff's department, which was set up for field sobriety tests. When he asked Delzer if she consented to field sobriety tests, she replied, "Legally do I have to?" and he said, "Well, you have a right, and that is going to determine whether or not we go further on." Delzer asked, "So, is there a lawyer that I can call?" Deputy Plath stated, "Well right now we are just in the preliminary stages, so, I mean, we are not even coming close to doing the legal stuff. This is for me testing to see where you are at. Do you consent to that or no?" Delzer then consented to the field sobriety tests, which she failed.

Deputy Plath testified after Delzer failed the field sobriety tests he considered her to be under arrest. He read Iowa Code section 804.20 to Delzer, gave her a telephone directory, and allowed her ample time to call any attorney of her choosing. When Delzer stated she did not want to make any more calls, Deputy Plath read the implied consent advisory to Delzer. Delzer agreed to a breath test, which showed her blood alcohol level was .130.

Delzer was charged with OWI, third offense, in violation of Iowa Code section 321J.2, a class "D" felony. Delzer filed a motion to suppress the results of her field sobriety tests, claiming under section 804.20 she should have been permitted to contact an attorney when she stated, "So, is there a lawyer that I can call?" prior to performing the field sobriety tests. She also claimed she was in custody at the time Deputy Plath informed her they were going to the jail, she was not informed of her *Miranda* rights, and her subsequent statements should be suppressed.

After a suppression hearing, the district court denied Delzer's motion to suppress, finding:

> In this case, the law enforcement center was initially a location for Deputy Plath to continue his investigation of [Delzer] in more suitable conditions than those that existed at the scene of the stop. When Deputy Plath and [Delzer] first arrived at the law enforcement center, the officer had not made a decision whether to arrest [Delzer] and take her into custody. Deputy Plath testified credibly that if [Delzer] had satisfactorily performed the field sobriety tests he administered at the law enforcement center, he would not have arrested her for OWI but instead would have taken [Delzer] back to the scene of the stop and allowed her to go on her own way. Because Deputy Plath had not yet made a decision to arrest [Delzer] and had not even completed the investigatory portion of his traffic stop, her request to call an attorney immediately upon their arrival at the law enforcement center was premature.
>
> The law enforcement center first became a "place of detention" for purposes of Section 804.20 once [Delzer] failed the field sobriety tests and Deputy Plath placed her under arrest for OWI. As soon as the conditions set out in the statute were met, the officer allowed [Delzer] to make as many calls as she wanted. It is the opinion of the Court that Deputy Plath complied with both the letter and the spirit of Section 804.20 in this case. Accordingly, the motion to suppress filed by [Delzer] should be denied.

(Citation omitted.)

Delzer filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), stating the district court had not ruled on the issue involving her *Miranda* rights. The district court stated Delzer had not presented any evidence or made any arguments at the suppression hearing on this issue, so the court concluded she did not wish to pursue it. The court did not amend its ruling on Delzer's motion to suppress.

The case proceeded to trial based solely upon the minutes of testimony. The court found Delzer guilty of OWI, third offense. She was sentenced to a term of imprisonment not to exceed five years, but the sentence was suspended,

with the exception of thirty days, and she was placed on probation for three years. Delzer now appeals her conviction.

## II. Section 804.20

Section 804.20 provides:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice or both.

Delzer claims she was restrained of her liberty because she was involuntarily taken from the location of the traffic stop to a "place of detention," the sheriff's department. She states under section 804.20, Deputy Plath should have permitted her to call an attorney when she asked, "So, is there a lawyer that I can call?" Our review of this issue is for the correction of errors at law. *See State v. Moorehead*, 699 N.W.2d 667, 671 (Iowa 2005).

We determine this case is governed by *State v. Krebs*, 562 N.W.2d 423, 424 (Iowa 1997), where during field sobriety testing a defendant requested to call his wife and a deputy told him he could call her once field sobriety testing was concluded. The Iowa Supreme Court determined "section 804.20 was not implicated at the time of [the defendant's] request because he was not in custody or otherwise sufficiently restrained." *Krebs*, 562 N.W.2d at 426. The court stated:

> Field sobriety tests are used by peace officers to determine whether there are reasonable grounds to believe a person is intoxicated. These tests are part of an officer's investigation to determine if a criminal offense has occurred. At this point in the investigation, the defendant is merely being detained by the officer, not restrained of his liberty. Although section 804.20 may be implicated in a situation short of a formal arrest, we do not believe

the language "restrained of the person's liberty for any reason whatever" extends to the investigatory portion of a traffic stop.

*Id.* (citations omitted). The court further noted at the time the defendant made his request the deputy had not made a decision as to whether he was in violation of chapter 321J, and therefore, "section 804.20 was not implicated." *Id.*

Like *Krebs*, the deputy in this case had not made a decision as to whether or not Delzer was in violation of chapter 321J when she first requested to call an attorney. *See id.* We agree with the district court's statement, "Because Deputy Plath had not yet made a decision to arrest [Delzer] and had not even completed the investigatory portion of his traffic stop, her request to call an attorney immediately upon their arrival at the law enforcement center was premature." We find no error in the district court's conclusion Delzer had been detained, but had not been restrained of her liberty, so section 804.20 was not implicated. *See State v. Dennison*, 571 N.W.2d 492, 495 (Iowa 1997) ("[A]n individual's detention by an officer for the purposes of performing field sobriety tests does not rise to the level of custody, but is merely detention for investigative purposes.").

Delzer claims the situation in this case is similar to that found in *Moorehead*, 699 N.W.2d at 671, where the Iowa Supreme Court determined the defendant was restrained of his liberty as he sat in the back of a patrol car. In that case, however, the defendant "had already failed three field sobriety tests, a preliminary breath test, arguably made an incriminating statement, and displayed many symptoms of drunkenness," and a deputy testified he considered the defendant was technically under arrest. *Moorehead*, 699 N.W.2d at 671. The court determined, "The investigatory stage of the stop had ended." *Id.* We

determine this case is not similar to *Moorehead* because the investigatory stage of the traffic stop was not completed at the time Delzer requested an attorney.

We affirm the decision of the district court denying Delzer's motion to suppress based upon section 804.20. Because Delzer's statutory right to contact an attorney was not violated, the court did not err in denying her request to suppress the results of the field sobriety and breath tests.

### III.    Custodial Interrogation

Delzer claims the district court should have suppressed statements made about how much she had to drink because she was in custody once Deputy Plath told her they were going to the jail and she was not informed of her Miranda rights. The district court did not directly rule on this issue, but found Delzer did not present any evidence or argument on the issue at the suppression hearing. In ruling on her rule 1.904(2) motion, the court did not amend its suppression ruling, thereby impliedly denying her claims on this issue. Our review on this constitutional issue is de novo. *See State v. Russell*, 261 N.W.2d 490, 492 (Iowa 1978).

We first note Delzer's statement she had something to drink that evening was before Deputy Plath stated they were going to the sheriff's department. After this, Delzer stated she had four or five drinks, although this was prior to Deputy Plath's statement they were going to the jail. In any event, the United States Supreme Court has stated the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). The court stated, "It is settled that the safeguards

prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* (citation omitted).

We have already determined Delzer was temporarily detained while the deputy performed field sobriety tests, and her liberty was not restrained, nor was her freedom of action curtailed to a degree associated with a formal arrest. *See id.* We affirm the district court decision denying Delzer's motion to suppress on the ground she was subjected to custodial interrogation without being informed of her *Miranda* rights.

We affirm Delzer's conviction for OWI, third offense.

**AFFIRMED.**

McDonald, J., concurs; Tabor, P.J., dissents.

**TABOR, Presiding Judge.** (dissenting)

I respectfully dissent. I would reverse the order denying Amanda Delzer's motion to suppress. In my view, the record shows when the deputy transported Delzer to the sheriff's department to conduct field sobriety tests, he had custody of her and she suffered a restraint of liberty within the meaning of Iowa Code section 804.20 (2013).

The majority accepts the State's assertion that Delzer nodded her assent when the deputy told her: "We're going to secure your truck here, we'll go up to the sheriff's department and do fields up there, without the snow and everything—is that fair enough? We'll do everything up there?" It is far from clear by viewing the in-car video footage[1] that Delzer consented to be transported to the sheriff's department. She was nodding slightly *throughout* many of the deputy's statements, more in general recognition she was listening than indicating unambiguous consent to be transported.

The issue of her assent is critical because to legally transport Delzer, the deputy needed probable cause or her consent. *See State v. Lathum*, 380 N.W.2d 743, 745-46 (Iowa Ct. App. 1985) (recognizing cooperation with officers "cannot be equated with voluntary consent"). An officer may ask a motorist to engage in field sobriety tests based on the reasonable suspicion standard from *Terry v. Ohio*, 392 U.S. 1, 30 (1968). *See State v. Stevens*, 394 N.W.2d 388, 391 (Iowa 1986). But the removal of a suspect from the scene of the stop—even

---

[1] The suppression exhibit contains audio of the deputy's conversation with Delzer only while showing the outside view from the dash camera. The footage showing the inside of the car does not include audio, so it is difficult to assess exactly how Delzer reacted to the deputy's statements.

for valid investigatory purposes as the deputy had here—marks the point where reliance on *Terry* is no longer enough. *See State v. Bradford*, 620 N.W.2d 503, 507 (Iowa 2000) (citing *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 591 (6th Cir. 1994), for the notion "there is no such thing as a '*Terry* transportation'").

I recognize that asking a motorist to perform field sobriety tests normally does not rise to the level of a formal arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("[A] single police officer asked respondent a modest number of questions and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest."); *State v. Krebs*, 562 N.W.2d 423, 426 (Iowa 1997) (during field sobriety tests on the scene a defendant is "not restrained of his liberty"); *State v. Marks*, 644 N.W.2d 35, 37 (Iowa Ct. App. 2002) (same). But the transportation of the motorist to the sheriff's department adds a different dimension to the analysis.

I also recognize that our supreme court concluded in *State v. Dennison* that transporting the motorist to the law enforcement center to conduct tests to determine if he was under the influence of drugs was "incidental to the investigation, and did not constitute an arrest." 571 N.W.2d 492, 497 (Iowa 1997). But that case was a speedy indictment challenge where the question was whether Dennison was arrested. A person's right to contact an attorney under section 804.20 "maybe implicated in a situation short of a formal arrest" so long

as the person was restrained of her liberty.[2]  *State v. Moorehead*, 699 N.W.2d 667, 671 (Iowa 2005); *Krebs*, 562 N.W.2d at 426.

Delzer's situation bears similarities to *Moorehead*, where the court held the motorist was "'restrained of [his] liberty' as he sat in the back of the patrol car." 699 N.W.2d at 671 (citation omitted).  Delzer's driving led the deputy to initiate the traffic stop.  The deputy placed her in the squad car, albeit in the front seat rather than the backseat.  The deputy questioned Delzer about how much alcohol she had consumed that evening, prompting her to tell him she had "about four or five" drinks and "probably" felt the effects of intoxication.  The deputy testified he noticed her eyes were bloodshot and watery and she slurred her speech.  He also found several open beer cans in the truck, which Delzer said belonged to her husband.  Objectively, the deputy had gathered sufficient evidence to invoke implied consent to test.  *See Dennison*, 571 N.W.2d at 495-96 (discussing reasonable grounds under Iowa Code section 321J.6).

When they arrived at the place of detention, the deputy asked Delzer if she would consent to performing field sobriety tests.  She asked: "Legally, do I have to?"  The deputy's response was imprecise: "Well, you have a right, and that is going to determine whether or not we go further on."  Delzer asked: "Is there a lawyer that I can call?"  The deputy responded that they were "just in the

---

[2]  In the suppression ruling, the district court erroneously found the deputy advised Delzer that she was not under arrest when he was taking her to the sheriff's department.  On direct examination, the deputy testified: "I explained to her she wasn't under arrest.  That she was just being detained."  The deputy's recollection is not borne out by the recording of his exchange with Delzer in the squad car.  And on cross-examination, the officer testified he did not tell Delzer she was under arrest, but he also did not tell her she was *not* under arrest.  Delzer testified she believed she was under arrest when the deputy said she would be transported to the county jail (which is located at the sheriff's department).

preliminary stages" and were "not even coming close to doing the legal stuff. This is for me testing to see where you are at. Do you consent to that or no?" She responded: "I guess so."

I would find Delzer was restrained of her liberty when she invoked her right to contact an attorney, and the deputy—who had taken custody of her by transporting her to the sheriff's department—had an obligation to permit her to call or consult with an attorney under section 804.20. His failure to do so requires suppression of the results of the field sobriety testing, as well as the results of her breath test. *See State v. Hellstern*, 856 N.W.2d 355, 365 (Iowa 2014) (discussing remedy for violation of section 804.20).