# IN THE COURT OF APPEALS OF IOWA

No. 18-1643
Filed November 6, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RUDY DANILO DEPAZ COLOCHO,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Gregory D. Brandt, District Associate Judge.


        A defendant appeals his conviction for third-offense operating while intoxicated challenging the suppression ruling. **AFFIRMED.**


        Daniel J. Rothman of McEnroe, Gotsdiner, Brewer, Steinbach & Rothman P.C., West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.


        Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**Tabor, Judge.**

Rudy Colocho appeals his conviction for third-offense operating a vehicle while intoxicated. During a traffic stop, a police officer accommodated Colocho's request to urinate before he performed field sobriety tests. The officer took Colocho to the police station, but after he used the restroom he refused sobriety testing and instead requested an attorney. The officer spurned the request, saying "you don't call your lawyer in the middle of a traffic stop." Colocho moved to suppress evidence from the stop, and the district court found the officer violated Iowa Code section 804.20 (2018). But the court also found the officer cured that violation by later advising Colocho of his rights. The court found Colocho's refusal to take the DataMaster test to be admissible. Colocho stipulated to the minutes of testimony, and the court found him guilty. He now appeals contesting the suppression ruling.

Because the officer's delayed advisory of Colocho's rights satisfied the purpose of section 804.20 and, alternatively, because any violation was harmless error, we affirm.

## I.    Facts and Prior Proceedings

Around 2:00 a.m. on a Saturday in April 2018, West Des Moines Police Officer Blake Mills saw a Hyundai Sonata strike a raised median as the car turned onto Mills Civic Parkway. As the officer followed the car, he noticed it swerving within the lane of traffic and even leave the lane a few times. Once the car neared the interstate, it came to a full stop at a yellow light—half in the turning lane and half into the curb marked by white lines. The driver—who the officer later identified as Colocho—then negotiated a U-turn but veered too wide and "both passenger

tires went up and over the curb and began riding through the grass on the outskirts of the road."

At that point, Officer Mills turned on his blue lights, and Colocho pulled over. The officer asked Colocho to perform field sobriety tests. But, according to Mills, Colocho was "very uncooperative and continually stated he had to pee and would not move beyond that train of thought." The officer told Colocho he would take him to the police station so he could use the restroom. Officer Mills testified he did not want Colocho to urinate on the side of the road in public. The officer patted Colocho down, handcuffed him, and placed him in back of the patrol car.

Upon arriving at the police station, the officer's body camera showed him usher Colocho through two sets of secured doors. Another officer opened a third door for them to enter. Once inside the station's hallway, Mills again patted down Colocho before removing his handcuffs. Mills then allowed Colocho to use the restroom under his close supervision.

After that, the officer moved Colocho further inside the station where he again asked Colocho to perform field sobriety tests. Colocho first complied by placing his feet together and arms to his sides. Officer Mills asked Colocho to maintain that position. In response, Colocho said he did not understand the directions. Colocho then started speaking Spanish and asked for a lawyer.

Officer Mills told Colocho he was asking him to perform the same tests he would have conducted at the roadside and he could not call his lawyer in the middle of the traffic stop. The officer informed Colocho that once they completed those tests, he could call his lawyer.

Colocho continued to speak in Spanish, and Officer Mills eventually made calls to find an interpreter. After the interpreter arrived, Colocho still refused to perform the field sobriety tests. Colocho also refused to take a preliminary breath test. Officer Mills then placed Colocho in custody and advised him of his rights under section 804.20. The officer provided Colocho with his cell phone and a phone book, but Colocho "did not make a single call." The officer recalled Colocho was "opening and closing the Facebook app and was zooming in and out of Google Maps without attempting to make any form of communication." Colocho eventually dropped his phone on the floor and "didn't even try to pick it up." The officer estimated Colocho had just a little under an hour to make a phone call before the officer invoked implied consent. Colocho refused to take the DataMaster test.

## II. Scope of Review.

We review the district court's ruling under section 804.20 for errors at law. *State v. Krebs*, 562 N.W.2d 423, 425 (Iowa 1997) (citing *State v. Frake*, 450 N.W.2d 817, 818 (Iowa 1990)). If the district court properly applied the law and substantial evidence supports its findings of fact, we will uphold its ruling on a motion to suppress. *State v. Moorehead*, 699 N.W.2d 667, 671 (Iowa 2005). We consider evidence to be substantial when reasonable minds could accept it as adequate to reach a conclusion. *State v. Garrity*, 765 N.W.2d 592, 595 (Iowa 2009).

## III. Analysis

Our legislature provided this statutory protection for arrested persons:

> Any peace officer . . . having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the

place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both.  Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney.  If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained.  If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody.  An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay.  A violation of this section shall constitute a simple misdemeanor.

Iowa Code § 804.20.

### A. Violation of Rights Under Section 804.20 and Exclusion of Evidence

In this appeal, Colocho asks us to decide if an initial denial of this right to communications requires exclusion of all incriminating evidence gained for the duration of the detention or if a later advisory can cure the violation.

To set the stage, Colocho contends the district court was partially right—in finding Officer Mills violated his rights under section 804.20 when he asked for a lawyer at the police station.  The State disagrees.  Citing *State v. Davis*, 922 N.W.2d 326 (Iowa 2019), the State argues Colocho's request for an attorney did not trigger section 804.20 because (1) Colocho was not in custody, (2) he was at the place of detention only to use the restroom, and (3) Officer Mills had not completed the investigatory portion of his traffic stop.

In *Davis*, a deputy transported a suspected drunk driver to the jail's sally port to conduct field sobriety tests because of snowy conditions at the roadside. 922 N.W.2d at 328.  Our supreme court held the deputy did not violate the driver's communication rights by denying his request to call his wife until after field sobriety testing occurred because the sally port was a location for testing, not a "place of

detention" within the meaning of section 804.20. *Id.* at 332. Colocho distinguishes *Davis*, contending Davis was not handcuffed or taken inside a secure police station to conduct the field sobriety tests.

The district court did not have the benefit of the analysis in *Davis* when deciding Colocho's suppression ruling. And we need not resolve this appeal on that ground. Assuming without deciding the district court was correct in ruling that Officer Mills initially violated Colocho's rights under section 804.20, we agree with the court's additional finding that the officer remedied the situation by later advising Colocho of his rights.

That remedy does not sit well with Colocho. He lobbies for a more sweeping exclusionary rule under section 804.20. Colocho contends that because the officer violated his statutory rights in declining his request to call an attorney, any evidence collected after that should be suppressed. He believes all later proof is tainted under the fruit-of-the-poisonous-tree doctrine. *See State v. Naujoks*, 637 N.W.2d 101, 111 (Iowa 2001) (explaining concept that indirect evidence may be "tainted" by original illegality).

In his appellant's brief, Colocho argues that if the officer had timely afforded him the opportunity to seek guidance from an attorney, "the entire subsequent proceedings would have gone more smoothly" and he would not have uttered incriminating words or engaged in incriminating actions. But at the oral argument, counsel was unable to provide any examples of incriminating words or actions—

subject to exclusion under section 804.20[1]—that occurred between the alleged violation and the officer's giving of the advisory. Because no excludable evidence emerged in that window of time, we need not apply a fruits analysis.

The defendant further argues that when the officer did provide Colocho the tools to call a lawyer or family member, it was likely Colocho believed "the ship had sailed." In other words, a call would have come "too late in the proceedings to make any difference." We find this argument unpersuasive. "As a pragmatic matter, it is unrealistic to expect law enforcement to hand an accused a phone the minute he or she steps foot into the detention center." *State v. Smith*, No. 16-0749, 2017 WL 510957, at *2 (Iowa Ct. App. Feb. 8, 2017). And "the ship could not have sailed" if Colocho cannot point to any evidence that would have been excluded as a result of the alleged violation of section 804.20.

Section 804.20 guarantees detained suspects a reasonable opportunity to communicate with a lawyer or family member. *See State v. Hicks*, 791 N.W.2d 89, 95 (Iowa 2010). When that opportunity is denied, evidence that would have been protected by the guarantee is off limits in the prosecution. *Id.* at 97. But that does not include all incriminating conduct at the police station. *See Garrity*, 765 N.W.2d at 597 (declining to exclude video of "Garrity's body motions, judgment, slurred speech and inability to communicate"). This precedent undermines Colocho's call for a broader exclusionary rule.

---

[1] "The exclusionary rule extends to the exclusion of breath tests, breath test refusals, and non-spontaneous statements obtained after unnecessary delay in allowing the person the statutory right to consult with an attorney or family member." *Garrity*, 765 N.W.2d at 597.

Under the existing exclusionary rule, the only evidence hanging in the balance was Colocho's refusal to submit to chemical testing. In *State v. Vietor*, the Iowa Supreme Court discussed the statutory right to counsel in operating-while-intoxicated investigations. 261 N.W.2d 828, 832 (Iowa 1978). The court decided an officer must permit an arrested person to call a lawyer "before being required to elect whether he shall submit to a chemical test." *Id.* After advising Colocho of his rights under section 804.20, Officer Mills afforded Colocho plenty of time to contact an attorney before asking him to decide whether to provide a breath sample. Colocho chose not to make any calls though he had access to his cell phone and a phone book. Colocho refused the DataMaster test nearly an hour after receiving the advisory. Under these circumstances, the test refusal was admissible evidence in his stipulated bench trial.

**B. Harmless Error**

Even if the officer's delayed advisory did not cure the initial violation of Colocho's rights under section 804.20, the conviction stands if the error was harmless. *See Garrity*, 765 N.W.2d at 597. For nonconstitutional error, like violations of section 804.20, we ask: "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?" *Id.* We presume prejudice, but may find harmless error if the evidence related to the violation was cumulative to other admissible evidence. *Id.*

Here, the record shows Colocho's chemical-test refusal did not loom large in the district court's finding of guilt. The far more compelling evidence came from the video recordings and the officer's observations of Colocho's behavior. Officer

Mills testified to Colocho's poor driving. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) (finding police reports regarding defendant's erratic driving supported a finding he was under the influence of alcohol when he operated his vehicle). In his report, the officer noted "a strong odor of an alcoholic beverage coming from [Colocho's] person" as they interacted during the stop. The officer also noted Colocho's impaired balance—"he was leaning and nearly fell towards me." And Colocho was uncooperative during the stop, swearing and ignoring the officer's directions. Colocho's slurred speech can be detected on the recordings in the record. *See State v. Morgan*, 877 N.W.2d 133, 137 (Iowa Ct. App. 2016) (discussing common indicia of intoxication). All told, the stipulated record contained strong evidence Colocho was operating while under the influence. We find any violation of Colocho's rights under section 804.20 was harmless error. *See Garrity*, 756 N.W.2d at 598. Colocho is not entitled to new trial.

## IV. Conclusion

To recap, we assume without deciding the district court properly found an initial violation of section 804.20. But we conclude the court also was correct in finding that violation was resolved when the officer eventually advised Colocho of his right to communicate with an attorney and allowed him nearly an hour to exercise that right before his test refusal. Colocho's argument that his actions would have been different if he had an earlier opportunity to speak with an attorney is speculative in nature. In the alternative, any violation of section 804.20 was harmless error.

**AFFIRMED.**