# IN THE SUPREME COURT OF IOWA

No. 13–1938

Filed April 17, 2015

**STATE OF IOWA,**

Appellee,

vs.

**BENJAMIN JOSEPH LYON,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Carol S. Egly (suppression) and Carol L. Coppola (trial), Judges.

The defendant seeks further review of a court of appeals decision affirming the district court's judgment and sentence for operating while intoxicated, second offense. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Brandon Brown of Parrish, Kruidenier, Dunn, Boles, Gribble & Gentry, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, John P. Sarcone, County Attorney, and Maurice Curry and Olu Salami, Assistant County Attorneys, for appellee.

**APPEL, Justice.**

In this case, we consider the validity of a conviction for operating a motor vehicle while intoxicated, second offense. The police officer stopped Lyon's vehicle based upon a suspicion that Lyon was operating a vehicle without proper illumination in violation of Iowa Code section 321.388. Lyon claims the arresting officer lacked reasonable suspicion to make a traffic stop because the officer was too far from the vehicle to have more than a hunch that Lyon's license plate was improperly illuminated and because the headlights of the officer's vehicle interfered with his ability to observe whether a violation of law was occurring. Second, Lyon argues that after his arrest for driving while intoxicated, his rights under Iowa Code section 804.20 were violated because the officer failed to properly inform him of the purpose of a phone call under this Code provision.

We transferred the case to the court of appeals. The court of appeals affirmed Lyon's conviction. We granted further review. We now vacate the decision of the court of appeals and affirm the district court.

## I. Background Facts and Proceedings.

**A. The Arrest.** Polk County Sheriff's Deputy Jason Tart was on duty in Polk County at approximately 2:00 a.m. on May 31, 2013. At about that time, he stopped a vehicle driven by Benjamin Lyon based on his suspicion that the vehicle was operating without a properly illuminated rear license plate in violation of Iowa Code section 321.388 (2013).[1] After the stop and subsequent administration of three field sobriety tests, Deputy Tart arrested Lyon for driving while intoxicated.

---

[1]We have viewed the DVD recording from Deputy Tart's patrol car's dash camera, admitted into evidence at the suppression hearing, and find it inconclusive on the factual issues.

At the station, Deputy Tart gave Lyon *Miranda* warnings and the implied-consent advisory required by Iowa Code section 321J.6. The defendant made three phone calls. After making the phone calls, Deputy Tart asked Lyon for a breath sample pursuant to the implied-consent law. Lyon refused. Ultimately, the State charged Lyon with operating a motor vehicle while intoxicated (OWI), second offense, in violation of Iowa Code section 321J.2.

**B. Motion to Suppress.** Lyon filed a motion to suppress alleging both statutory and constitutional violations.

His statutory grounds were founded on Iowa Code section 804.20. According to the motion, Lyon placed his statutorily allowed phone calls *prior* to any law enforcement request for a breath specimen. Thus, at the time he was permitted to make the phone calls, Lyon asserted he had no knowledge he was going to be asked to provide a breath sample. Because of this timing, Lyon claimed he was deprived of his opportunity to speak to a family member or lawyer *about whether to submit to testing*, which he asserted is the primary purpose under Iowa Code section 804.20 of allowing telephone calls during an OWI investigation/arrest. Further, the motion to suppress claimed the investigating officer violated Iowa Code section 804.20 when, after Lyon asked about the purpose of the calls, the officer sidestepped the question and provided an evasive answer contrary to our caselaw under the statute. Because the purposes of the statute were not fulfilled, Lyon argued that his failure to submit to the test must be suppressed.

Lyon also asserted constitutional violations in his motion to suppress. He claimed the stop was not based upon reasonable suspicion or probable cause under the Fourth Amendment of the United States Constitution. The motion to suppress also cited article I, section 8 of the

Iowa Constitution, but did not present a separate argument under the state constitutional provision.

The district court held a hearing on the motion to suppress. The sole witness at the hearing was Deputy Tart. With respect to the circumstances giving rise to the stop of Lyon's vehicle, Deputy Tart testified that in the early morning hours of May 31, 2013, he was "probably doing stationary patrol, waiting for cars to drive by that had some sort of a violation." He observed Lyon's vehicle and believed the license plate light was out. He followed Lyon's vehicle for some distance, making sure his headlights did not illuminate Lyon's license plate. Deputy Tart agreed that if you get within a hundred feet or so the headlights will illuminate the license plate because it contains reflective material. Based on his observation, Deputy Tart testified that he was "100 percent certain" his headlights did not illuminate Lyon's license plate.

Turning to the Iowa Code section 804.20 claim, Deputy Tart testified that Lyon had refused to take a preliminary breath test at the scene of the stop. Deputy Tart testified he gave Lyon an opportunity at the police station to make phone calls. According to Deputy Tart, Lyon left voice mail messages for two persons and spoke with his father. After Lyon made the phone calls, Deputy Tart asked Lyon for a breath specimen. Lyon refused.

At the conclusion of the suppression hearing, the district court read its ruling into the record and denied Lyon's motion. The court first concluded Deputy Tart developed reasonable suspicion that criminal activity was afoot when he observed Lyon's vehicle turning from northbound on Main Street to eastbound on Second Avenue without an illuminated rear license plate. Additionally, the court held Deputy Tart

had probable cause to initiate the stop after he followed Lyon's vehicle and verified the rear license plate light was out. The court further found Deputy Tart complied with the provisions of Iowa Code sections 804.20 and 321J.6.

A jury subsequently found Lyon guilty of operating a motor vehicle while intoxicated. After Lyon stipulated to the disposition of his underlying first offense for OWI, he was convicted of OWI, second offense. Lyon appealed. The court of appeals affirmed Lyon's conviction. For the reasons expressed below, we vacate the decision of the court of appeals and affirm the judgment of the district court.

## II. Standard of Review.

We review alleged violations of constitutional rights de novo. *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997). We make an independent evaluation of the totality of circumstances shown by the entire record. *Id.*

"[W]e review the defendant's challenge of the district court's interpretation of Iowa Code section 804.20 for correction of errors at law." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). We will affirm a district court's ruling on a motion to suppress when the court correctly applied the law and there is substantial evidence to support the court's fact-finding. *State v. Hellstern*, 856 N.W.2d 355, 360 (Iowa 2014).

## III. Discussion of Lawfulness of Stop.

**A. Iowa Code Section 321.388.** In this case, law enforcement stopped Lyon's vehicle based upon the belief that it did not have a properly illuminated license plate. The relevant Code provision is Iowa Code section 321.388, which provides in pertinent part, "Either the rear lamp or a separate lamp shall be so constructed and placed as to

illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear."

**B. Positions of the Parties.**

1. *Lyon.* Lyon argues police "seized" him within the meaning of the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980) (noting that under the Fourth Amendment, a person is "seized" when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"); *Kinkead*, 570 N.W.2d at 100. He asserts that in order to engage in a roadside detention, the officer must have reasonable suspicion that "criminal activity [is] afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889, 911 (1968); *State v. Reisetter*, 747 N.W.2d 792, 794–95 (Iowa Ct. App. 2008).

From this familiar formulation, Lyon argues that, in this case, Deputy Tart lacked reasonable suspicion to make the stop. He asserts that when Deputy Tart was questioned about the stop at the hearing on Lyon's motion to suppress, the deputy testified the license plate was not visible, even outside fifty feet. Lyon asserts, however, that the fact Deputy Tart did not see illumination on the license plate from a distance outside fifty feet was irrelevant, as the statute requires only that the license plate be illuminated for legibility from a distance of fifty feet. According to Lyon, Deputy Tart further testified that when his vehicle was within one hundred feet or so of Lyon's vehicle, his own headlights illuminated the rear plates, making it impossible to tell whether the license plate was properly illuminated at that distance. As a result, Lyon

argues there was no evidence to establish that Deputy Tart observed his license plate "in a non-illuminated state around or inside of fifty feet."

In support of his argument, Lyon cites *Reisetter*, 747 N.W.2d at 794–95, in which the court of appeals held that an officer did not have reasonable suspicion to stop a vehicle based upon Iowa Code section 321.388 when the officer was traveling at a distance of one hundred feet or more behind the vehicle. Lyon cites a passage in *Reisetter* in which the court of appeals stated that "[w]ithout the facts that would support reasonable suspicion . . . the statutory requirement of fifty feet was being violated, an officer could claim *at any distance*[] that a license plate was not illuminated and therefore justify a stop." *Id.* at 795. In order to have reasonable suspicion under the statute, the *Reisetter* court believed the officer must be at a distance within fifty feet or some distance that reasonably approximates fifty feet when making observations about a potential infraction. *Id.* at 794–95.

Lyon claims the video footage of the stop demonstrates that it was not possible to determine whether at a distance of fifty feet the license plate was sufficiently illuminated to be legible. Because Deputy Tart had not observed Lyon's license plate at a distance approximating fifty feet without the spoiling feature of reflection from his own vehicle's headlights, Lyon argues the district court's conclusion that there was reasonable suspicion and probable cause to make the stop must be reversed.

2. *The State.* The State disagrees. It asserts Iowa Code section 321.388 establishes two separate requirements: (1) a license plate must be illuminated with a white light, and (2) the resulting illumination must "render [the license plate] clearly legible from a distance of fifty feet to the rear." Iowa Code § 321.388; *see also State v. Tyler*, 830 N.W.2d 288, 295

(Iowa 2013); *State v. Gustafson*, No. 08-1429, 2009 WL 4842474, at *4 (Iowa Ct. App. Dec. 17, 2009) (per curiam) (Zimmer, S.J., concurring specially). The State claims the record establishes that Deputy Tart had reasonable suspicion under both prongs of the test.

The State notes that at the suppression hearing Deputy Tart testified the license plate was not illuminated. When he made the determination there was no illumination, Deputy Tart testified he was "100 percent certain" that no light was cast from his car to Lyon's license plate. As a result, the State argues Deputy Tart had reasonable suspicion Lyon's license plate was not properly illuminated in violation of the first prong of Iowa Code section 321.388.

In addition, the State asserts Deputy Tart also had reasonable suspicion of a violation of the second prong of Iowa Code section 321.388, which requires that the illumination allow the license plate to be "clearly legible" from a distance of fifty feet. Although Deputy Tart could not give a precise distance from which he observed the license plate, he stated the furthest he was from Lyon's vehicle was outside fifty or seventy-five feet away. The State urges that although Deputy Tart's observations may not have been made at the precise fifty-foot mark, his vehicle was close enough to provide reasonable suspicion of a violation of the second prong of Iowa Code section 321.388.

The State addresses the *Reisetter* case in two ways. First, the State suggests *Reisetter* was wrongly decided and should be overruled by this court. Citing Louisiana authority, the State believes reasonable suspicion that a license plate is not legible from fifty feet may arise from an observation point as far back from the vehicle as ninety feet. *State v. Purvis*, 684 So. 2d 567, 569–70 (La. Ct. App. 1996).

In any event, the State suggests *Reisetter* is distinguishable. In *Reisetter*, 747 N.W.2d at 794, the deputy testified he was "probably under a hundred feet [away from the vehicle] or close to it." In this case, however, the State suggests the distance is materially closer. The State further notes that the *Reisetter* case did not consider the illumination prong of the statute.

**C. Prior Caselaw.** The prior caselaw begins with *Reisetter*. In *Reisetter*, the court of appeals considered the validity of a traffic stop based upon suspicion of a violation of Iowa Code section 321.388 when the officer observed the vehicle at a distance of about one hundred feet. *Id.* The court of appeals concluded the officer was too far away from the vehicle to "resolve the ambiguity" as to whether the license plate was properly illuminated. *Id.* at 795 (internal quotation marks omitted). The *Reisetter* court held that in order to have reasonable suspicion, the observing officer must be at a distance of fifty feet or approximately fifty feet from the vehicle. *Id.* at 794–95. A dissenting opinion argued, however, that the police officer observed the license plate light was "out" at a distance of about one hundred feet, thereby providing reasonable suspicion sufficient to justify the stop under Iowa Code section 321.388. *Id.* at 795–96 (Zimmer, J., dissenting).

In a subsequent case, the court of appeals distinguished *Reisetter*. In *Gustafson*, 2009 WL 4842474, at *3, the court of appeals considered a traffic stop under Iowa Code section 321.388 in which testimony at the suppression hearing indicated that the officer making the stop was travelling at a distance of between thirty-six to seventy-five feet behind

the suspect vehicle.[2] The court of appeals noted the distance was much closer to the fifty-foot distance from which the license plate must be sufficiently illuminated to be legible under Iowa Code section 321.388. *Id.* Furthermore, in *Gustafson* the officer backed away from the vehicle to make sure his headlights were not illuminating the license plate. *Id.* Finally, the officer saw the vehicle turn a corner, giving the officer an opportunity to view the license plate area without the potential reflection coming from the headlights of his vehicle. *Id.* As a result, the stop in *Gustafson* was upheld.

In *Gustafson*, a special concurrence noted that the validity of the stop did not turn on the exact distance between the vehicles. *Id.* at *4 (Zimmer, S.J., concurring specially). The special concurrence distinguished between a license plate light that was not working *at all* and a license plate light that did not provide sufficient illumination to be legible at a distance of fifty feet. *Id.* It noted that an officer may form reasonable suspicion that a license plate light is not working from a distance farther away than fifty feet. *Id.* At a minimum, the special concurrence called for clarification of *Reisetter* to distinguish between the two prongs of the statute. *Id.* at *5.

**D. Analysis.** Traffic stops on the open road have been subject to controversy. *See State v. Pals*, 805 N.W.2d 767, 772–73 & nn.2–4 (Iowa 2011) (noting "the proper scope of police authority in the context of routine traffic stops has been the subject of countless commentaries, many cases, and a number of consent decrees"). Unlimited discretion to stop vehicles on the open road may give rise to allegations of racial

---

[2]As in this case, the litigant in *Gustafson* did not argue that a different standard applied under article I, section 8 of the Iowa Constitution as compared to the Fourth Amendment of the United States Constitution. 2009 WL 4842474, at *2.

discrimination, characterized by the descriptive phrase "driving while black." *See State v. Harrison*, 846 N.W.2d 362, 371–72 (Iowa 2014) (Appel, J., dissenting); *Pals*, 805 N.W.2d at 772 & n.2 (citing David A. Harris, *"Driving While Black" and All Other Traffic Offenses: The Supreme Court and Pretextual Traffic Stops*, 87 J. Crim. L. & Criminology 544 (1997)). This is particularly true when an ordinary traffic stop morphs into a larger criminal investigation without reasonable suspicion beyond that provided by the original offense. *See Pals*, 805 N.W.2d at 772–73.

It is thus important to recognize what is not involved in this case. There is no indication in the record of an improper purpose behind the stop. *Cf. Harrison*, 846 N.W.2d at 369–73 (noting the case raised the question of pretext, as the "officers' obvious goal was not to take care of the [claimed Code violation], but rather to investigate an alleged crime for which they had no basis to initiate a stop"). Nor is this a case involving a consent search when the stop morphs far beyond the purpose of the stop. *See, e.g.*, *Pals*, 805 N.W.2d at 772. And, it is not a case in which an out-of-proportion arrest occurred as a result of a minor traffic violation. *See, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 361–62, 373, 121 S. Ct. 1536, 1561, 1567, 149 L. Ed. 2d 549, 581–82, 589 (2001) (O'Connor, J., dissenting) (noting that in holding the arrest of an individual for a minor criminal offense punishable only by a fine does not offend the Fourth Amendment, the majority "cloaks the pointless indignity that [the petitioner] suffered with the mantle of reasonableness"). Instead, this case involves an ordinary traffic stop, based upon a claim of reasonable suspicion, in which the officer, in the course of an ordinary investigation of a traffic infraction, uncovers evidence of the serious crime of driving while intoxicated.

In addition, although Lyon raises claims under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution, he does not advocate the application of a different standard under the Iowa Constitution than is generally applied by the United States Supreme Court under the United States Constitution. As a result, for the purposes of this case, we generally apply the federal standard, reserving the right to apply that standard in a fashion stricter than the federal caselaw. *See Tyler*, 830 N.W.2d at 291–92.

Both parties focus on whether Deputy Tart had reasonable suspicion to stop Lyon's vehicle to investigate an alleged violation of Iowa Code section 321.388. We begin with the language of the statute. The statute provides that the rear lamp or a separate lamp shall be constructed and placed "as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear." Iowa Code § 321.388. We agree with the State that the statute may be violated if there is no illumination of the license plate at all from a white light or if the illumination, though present, is so weak that the license plate is not clearly legible from a distance of fifty feet.

We also agree with the thrust of the special concurrence in *Gustafson*. *See* 2009 WL 4842474, at *4. When the issue is whether the license plate is illuminated *at all*, that lack of illumination can be detected from a distance greater than fifty feet. *Id.* In this case, the deputy formed a reasonable suspicion that there was no working license plate light when he observed the vehicle drive past him without an illuminated license plate and then followed the vehicle to confirm his suspicions that there was no illumination at all. He trailed the vehicle from a distance sufficient to ensure that his headlights were not reflecting on the license plate. Under these circumstances, we find no

constitutional infirmity under either the Iowa or the United States Constitutions.

Our holding is not inconsistent with *Reisetter*. In *Reisetter*, 747 N.W.2d at 794–95, the court of appeals focused only on the second prong of Iowa Code section 321.388, namely, whether the illumination was *sufficient* to be clearly legible. *Reisetter* did not explicitly consider whether there was reasonable suspicion to stop the vehicle based upon a total absence of illumination. In any event, to the extent that *Reisetter* is inconsistent with our opinion we announce today, it is overruled.

## IV. Discussion of Iowa Code Chapter 804.20.

**A. Introduction.** The second issue in this case requires us to revisit Iowa Code section 804.20, which provides:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

**B. Positions of the Parties.**

1. *Lyon.* There is no question that Deputy Tart permitted Lyon to make several phone calls after his arrest. Lyon, however, asserts Deputy Tart misled him about the purpose of calling a family member or attorney under Iowa Code section 804.20. Lyon contends that under our caselaw, the purpose of such a call is to help individuals decide whether to

consent to or refuse a chemical test. *See State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005). Lyon claims Deputy Tart misled him in two ways.

First, after he received his *Miranda* warnings and the implied-consent advisory pursuant to Iowa Code section 321J.6, Lyon was advised of his right to place a phone call. Lyon, however, asked about the purpose of the call, stating "I'm gonna call someone first to get out of here, correct?" and that is "the main objective for me?" In response, Deputy Tart stated, "I mean, honestly, what you want to do, if you want to bond out, that's your prerogative of these phone calls."

Lyon asserts Deputy Tart's response was misleading. According to Lyon, the purpose of a phone call under Iowa Code section 804.20 is to get advice on whether to consent to chemical testing. According to Lyon, after he stated that "the main objective" was "to get out of here," Deputy Tart should have told him that the purpose of the phone call was to obtain advice on the chemical testing issue, not to obtain release.

Second, Lyon also attacks the timing of Deputy Tart's phone call offer. According to Lyon, Deputy Tart had not yet asked for further chemical testing. Lyon asserts Deputy Tart offered the phone calls before he requested further chemical testing in order to undermine Lyon's ability to obtain advice on the consent issue.

In support of his claims, Lyon cites several of our cases decided under Iowa Code section 804.20. He asserts the cases stand for the proposition that the purpose of the phone call is to assist the defendant in deciding whether to consent to the chemical testing. *See State v. Walker*, 804 N.W.2d 284, 290 (Iowa 2011); *State v. Hicks*, 791 N.W.2d 89, 97 (Iowa 2010); *Tubbs*, 690 N.W.2d at 914. Further, according to Lyon, when an arrestee requests to make a call, the officer must advise the arrestee of the purpose of such a call under Iowa Code section 804.20.

*Didonato v. Iowa Dep't of Transp.*, 456 N.W.2d 367, 371 (Iowa 1990). When the purposes of Iowa Code section 804.20 have not been met, Lyon argues the result is the exclusion of evidence. *See State v. Vietor*, 261 N.W.2d 828, 832 (Iowa 1978).

2. *The State.* On the merits,[3] the State contends Deputy Tart had no affirmative duty to inform Lyon of the purpose of making a phone call under Iowa Code section 804.20. The State argues *Didonato* should be read in tandem with *State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009). In *Garrity*, we stated that when an arrestee asked to call a person outside the scope of section 804.20, law enforcement had an obligation to advise the arrestee "of the purpose of the phone call, i.e., who [the arrestee] could call." *Id.* Thus, according to the State, Deputy Tart had no affirmative duty to advise Lyon of the purpose of the phone call once he was given the opportunity to call persons authorized to receive calls under the statute.

In any event, even if there was an affirmative obligation under Iowa Code section 804.20, the State argues Deputy Tart did not mislead Lyon. The State sees nothing misleading about Deputy Tart's statement, "I mean, honestly, what you want to do, if you want to bond out, that's your prerogative of these phone calls." The State further finds nothing misleading about the timing of the phone calls, noting Lyon had just previously received *Miranda* warnings and his implied-consent advisory.

---

[3]The State contends Lyon has not preserved error because he failed to provide this court with a transcript of the underlying criminal proceedings. *See State v. Mudra*, 532 N.W.2d 765, 767 (Iowa 1995) (per curiam), *overruled by State v. Thompson*, 856 N.W.2d 915, 921 (Iowa 2014). Lyon counters an adverse ruling on a motion to suppress is sufficient to preserve the issue on appeal. *See State v. Wright*, 441 N.W.2d 364, 366 (Iowa 1989) (en banc). Because we conclude Lyon fails on the merits, we find it unnecessary to address the preservation issue.

According to the State, the officer's only obligation is to give the arrestee an opportunity to make phone calls prior to submitting to the chemical test. *See Didonato*, 456 N.W.2d at 371 (noting the statute was not violated when a defendant "ha[d] an actual opportunity to consult with counsel or a family member before submitting to the chemical test"). In this case, the State maintains, it strains credulity to believe that Lyon did not know a request was in the offing after Lyon received his *Miranda* warnings and the implied-consent advisory.

**C. Caselaw Under Iowa Code Section 804.20.** We have considered a variety of interpretive issues under Iowa Code section 804.20. In *Vietor*, 261 N.W.2d at 831, we held that the statute's predecessor provided "a limited statutory right to counsel before making the important decision to take or refuse a chemical test under implied consent procedures."

We revisited the statute in *Didonato*. In *Didonato*, 456 N.W.2d at 368, an accused sought to call a friend rather than an attorney or a family member as allowed under Iowa Code section 804.20. We stated in *Didonato* that while law enforcement had no affirmative duty to inform a suspect of his or her right to make a phone call to counsel, an officer cannot stand mute when the accused requests to make a call to a friend. *Id.* at 371. In *Didonato*, we stated that "[i]n these circumstances the statute is implicated and the officer should then advise for what purpose a phone call is permitted under the statute." *Id.*

With respect to the timing of the phone call, we noted in *Didonato* that a phone call after the implied-consent form was signed is still timely because consent may be revoked. *Id.* When a phone call was made and the accused "ha[d] an actual opportunity to consult with counsel or a

family member before submitting to the chemical test, the purposes behind the statute are served." *Id.*

In *Garrity*, 765 N.W.2d at 594, we confronted a situation in which the party accused of drunk driving sought to make a phone call to a narcotics officer in order to arrange a deal in which he would reveal a large drug operation in return for not doing jail time. The arresting officers declined the request as outside the scope of section 804.20 but did not affirmatively disclose to whom a call could be made. *Id.* We held that under the circumstances, the police officers had an affirmative duty to advise Garrity whom he could call under the statute. *Id.* at 597.

In *Garrity*, we explored the permitted purposes of the phone call. *Id.* at 596. We recognized that "[o]ne purpose of Iowa Code section 804.20 [was] to allow [an] arrestee to call an attorney before making the decision to submit to chemical testing." *Id.* (citing *Tubbs*, 690 N.W.2d at 914). We emphasized, however, that the statute does not limit the phone call to that particular purpose. *Id.* We noted that as long as the purpose of the phone call is a good faith purpose,

> the arrestee may choose to contact family or a legal representative for advice, or to have them inform his employer that he is not likely to be at work, pick up children from school, or arrange to have the dog let out.

*Id.* We stated that when an accused seeks to make a phone call to a person not covered by Iowa Code section 804.20, the officer has an obligation to advise the accused "of the purpose of the phone call, i.e., who [an arrestee] could call." *Id.* at 597. We reiterated the broader phrasing of purpose in *Hicks*, 791 N.W.2d at 95, in which we noted "[t]he legislative purpose [behind] section 804.20 [was] to afford detained suspects the opportunity to communicate with a family member and attorney."

**D. Analysis.** As a general matter, we have insisted that law enforcement officers not play games when faced with a request from a person in custody to communicate with the outside world after being arrested. So, for example, an accused who seeks to talk to a narcotics officer may be advised that he or she cannot do so, but must then affirmatively be advised that he or she can call an attorney or family member. *See Garrity*, 765 N.W.2d at 597. Similarly, a suspect's inquiry of an officer whether his or her mom might be called when his or her vehicle is impounded and whether he or she could "call somebody to get me out?," is sufficient to trigger an affirmative duty on the part of law enforcement to explain the arrestee's right to call a family member under the statute. *See Hicks*, 791 N.W.2d at 92, 96.

But in this case, Lyon asks us to go well beyond our caselaw. Law enforcement in this case plainly honored Lyon's request to make phone calls to an attorney or to family members. Indeed, he was able to contact his father. Lyon seeks more. He asks us to require law enforcement officers to explain that a purpose of the call is to obtain advice regarding whether to submit to a chemical test. Lyon claims Deputy Tart misled him when he did not respond to his question regarding whether the primary purpose of the call was to get him out of jail.

While there is language in *Didonato* that might be recruited to support Lyon's position, we think the reasoning in *Garrity* is more persuasive and precludes Lyon's claim. It is no doubt true that *one* purpose of the call may be to obtain advice on the question of whether to consent to chemical testing. But as *Garrity* makes clear, the phone call can certainly be used for other purposes as well, including making arrangements for a suspect to be bailed out or picked up upon his or her release. *See* 765 N.W.2d at 596. We do not believe law enforcement

officers must help shape the nature of the communication with attorneys and family members once they have honored the accused's right to communicate with such individuals. Deputy Tart's response to Lyon's statement, in essence that it was up to him to determine the nature of the communication with his attorney or family member, was thus not misleading but was a correct statement of law.

We also reject the claim that Deputy Tart improperly sequenced events to eviscerate Lyon's statutory right to contact an attorney or family member. After his arrest, Lyon was provided his *Miranda* rights and the implied-consent advisory. While a specific request for a specimen had not yet been made, a reasonable person arrested for drunk driving would know, after receiving the implied-consent advisory, that such a request was in the offing. On this record, Lyon has not persuaded us that Deputy Tart undermined his right to consult with counsel or a family member through the timing of his request for a breath specimen.

**V. Conclusion.**

For the above reasons, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Hecht, J., who takes no part.