# IN THE COURT OF APPEALS OF IOWA

No. 19-1101
Filed October 21, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT JAMES COOK,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Palo Alto County, Ann M. Gales, District Associate Judge.


        Robert Cook appeals his conviction of operating while intoxicated.
**AFFIRMED.**


        Elizabeth K. Johnson, Spirit Lake, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.


        Considered by Bower, C.J., Schumacher, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

Robert Cook appeals his conviction of operating while under the influence (OWI). He argues the district court erred in denying his motion to suppress evidence allegedly obtained in violation of his constitutional right against unreasonable seizures, statutory rights under Iowa Code section 804.20 (2018), and statutory implied-consent procedures. Alternatively, he claims one of his attorneys was ineffective in waiving his ninety-day speedy-trial right without authority and another of his attorneys was ineffective in stipulating to the admission of certain evidence at trial.

**I.      Background Facts and Proceedings**

Upon a review of the entire record, we make the following factual findings. On August 17, 2018, Sergeant Aaron Steffen of the Emmetsburg Police Department was on routine patrol when dispatch reported receiving a 911 call[1] regarding a vehicle, later determined to be driven by Cook, entering the eastern city limits of Emmetsburg that was unable to maintain its lane or speed. The caller reported the vehicle to be a 2008 or 2009 blue F-150, which dispatch relayed to Steffen.[2] The caller continued to follow the pickup and subsequently provided a license plate number. Then the caller advised the subject vehicle was turning into a Casey's convenience store. Steffen was in the area by this point and questioned

---

[1] An audio recording of the 911 call was admitted as evidence at the suppression hearing and trial.

[2] While Steffen testified at the suppression hearing that he did not know the truck's color, make, or model, the audio recording unequivocally establishes dispatch advised Steffen: "a caller is following a blue Ford F-150 . . . , said he can't keep constant speed and is all over the road." Steffen responded: "10-4." Steffen agreed in his testimony the incident was roughly nine months prior and his memory was not as accurate as it would have been at the time of the encounter.

dispatch if the vehicle was turning into Casey's. Dispatch responded in the affirmative.

Steffen parked on the driver's side of Cook's truck while Cook was exiting his vehicle.[3] Cook then proceeded in the direction of the convenience store, at which point Steffen honked at him. Cook turned around and looked at Steffen, upon which Steffen used his hand to motion Cook over to his vehicle. Steffen rolled down his passenger-side window, and Cook approached. Steffen advised Cook of the report of erratic driving. When Cook began to speak, Steffen detected an odor of alcohol. After exiting his cruiser, Steffen advised Cook he smelled of alcohol. Cook reported he stopped at a friend's house for "one beer" roughly five minutes ago. Steffen subsequently conducted standard field sobriety testing—horizontal-gaze nystagmus, walk-and-turn, and one-legged stand. Steffen subsequently arrested Cook for OWI. Steffen allowed Cook an opportunity to speak with his wife on the scene, and Cook advised: "She's just gonna go home." The three conversed for a while, after which Steffen transported Cook to the local jail.

Once at the jail, Steffen took Cook to the booking room.[4] There, Steffen provided Cook a copy of the implied-consent-advisory form for the purpose of allowing him to follow along as Steffen recited the advisory. After going over the implied-consent advisory and advising Cook he would be requesting him to submit to chemical-breath testing, Steffen questioned Cook, "Is there any phone calls you

---

[3] Video footage from Steffen's body and dash cameras was also admitted as evidence at the suppression hearing and trial.
[4] Video footage from the booking room's camera system was also admitted at the suppression hearing and trial.

would like to make right now? Do you want to call somebody?" Cook responded, "No." After Cook used the restroom, Steffen formally requested a breath sample, proffered a written request for the same, and requested Cook's signature. Then, after some discussion, Steffen read Cook his *Miranda* rights. After some time contemplating whether to submit to testing, Cook questioned whether he could have a lawyer present before taking the test. Steffen responded, "Sure, what's his number?" Cook responded he did not know. Steffen directed him to figure out who he wanted to call. Cook advised, "It's a long-distance number." Steffen responded, "I don't care. I can't pull it out of your head though. You're gonna have to know who you're calling." Cook replied, "I know who I'm calling but it's a long-distance number. What would that do for me here?" Steffen responded he would not answer anything because Cook requested an attorney. Then Steffen directed Cook to figure out the number of the person he wanted to call so they he could do so. After some discussion, Steffen redirected Cook to call an attorney and placed the phone in front of Cook. He advised, "There's the phone, you make whatever phone calls you need sir." Steffen offered Cook a phone book, upon which Cook stated, "No sir that won't be necessary." After more time passed, Steffen again asked Cook if he wanted to make any phone calls. Cook responded in the negative. Even later, Steffen advised he could call anyone he wanted. Cook took no action. Cook subsequently stated his wife needs him. Steffen questioned, "Do you want to call her?" Cook responded, "Not yet. Not unless I can tell her to come get me." Cook ultimately consented to chemical testing. After Cook provided a breath sample, Steffen realized Cook did not sign the consent form. Steffen asked, "So I'm assuming that you consent, that you're consenting to that?" Cook

answered, "I did, because I just blew in it." Cook then signed the form. Cook had a blood-alcohol concentration of .122.

Cook was formally charged by trial information with OWI. Cook filed a written arraignment and plea of not guilty, in which he acknowledged his ninety-day right to a speedy trial pursuant to Iowa Rule of Criminal Procedure 2.33 and waived said right. Thereafter, Cook filed a combined motion for new counsel and dismissal of the proceedings as in violation of his ninety-day speedy-trial right. In his motion, he alleged he directed his counsel to demand a speedy trial and counsel waived said right without Cook's authorization. At the ensuing hearing, Cook largely echoed his claims. Defense counsel testified "Cook waived his right to a speedy trial." The court granted the motion for new counsel but denied the motion to dismiss.

Shortly thereafter, substitute counsel filed a generic motion to suppress. The matter proceeded to hearing in early June 2019, after which Cook's fourth attorney[5] filed a brief in support of the motion to suppress, arguing Cook was subjected to an unconstitutional seizure, his statutory rights under Iowa Code section 804.20 were violated, and the implied-consent procedure was deficient. In its ensuing ruling, the district court rejected each argument. As to the seizure issue, the court concluded the encounter was consensual prior to Steffen smelling alcohol coming from Cook's person and the seizure ensuing shortly thereafter was reasonable. Assuming Cook invoked his rights under section 804.20, the court

---

[5] Cook's second and third court-appointed attorneys withdrew due to conflicts of interest.

concluded Steffen provided him a reasonable opportunity to exercise those rights. As to the implied-consent procedure, the court found no defect.

The matter proceeded to bench trial on the minutes of evidence and the evidence presented at the suppression hearing. The court found Cook guilty as charged. Cook appeals.

## II. Analysis

### A. Unconstitutional Seizure

Cook challenges the district court's denial of his motion to suppress on the basis that he was not subjected to an unconstitutional seizure. "When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). "[W]e independently evaluate the totality of the circumstances as shown by the entire record." *State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018) (alteration in original) (quoting *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016)). "Each case must be evaluated in light of its unique circumstances." *Fogg*, 936 N.W.2d at 667 (quoting *Coffman*, 914 N.W.2d at 244). We give deference to the district court's findings of fact, but we are not bound by them. *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017).

"The Fourth Amendment [to] the United States Constitution," as applied to the states by the Fourteenth Amendment, "and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001); *accord State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Evidence obtained following a violation of these

constitutional protections is generally inadmissible at trial. *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963); *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961); *Naujoks*, 637 N.W.2d at 111.

Cook essentially argues Steffen had no basis to encounter or ultimately detain him. We easily conclude that after immediately smelling alcohol coming from Cook's person after observing him parking a vehicle, exiting the driver's side door, and making contact with him, Steffen had a valid basis to detain Cook for investigatory purposes. The issue is therefore whether the initial encounter amounted to a seizure and, if so, whether it was reasonable.

Cook implies Steffen's pulling into next to his vehicle, honking, and waving him over amounted to a seizure. The State maintains that portion of the encounter was consensual and therefore did not amount to a seizure in the constitutional sense. "[N]ot all personal intercourse between the police and citizens involve seizures." *State v. Wilkes*, 756 N.W.2d 838, 842 (Iowa 2008); *accord State v. Lowe*, 812 N.W.2d 554, 570 (Iowa 2012). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Wilkes*, 756 N.W.2d at 842 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "[A] seizure does not occur if a reasonable person would feel free to disregard the police and go about his business." *Fogg*, 936 N.W.2d at 668 (internal quotation marks omitted) (quoting *Wilkes*, 756 N.W.2d at 843). In order "to convert an encounter between police and citizens into a seizure," there must be "objective indices of police coercion," which "is not established by ordinary indicia of police authority," such as merely flashing a badge, wearing a uniform, or being visibly armed. *See Wilkes*, 756 N.W.2d at

843; *accord Fogg*, 936 N.W.2d at 668 (noting objective indices of coercion must be present to convert a consensual encounter into a seizure). Whether a seizure occurs depends on the totality of the circumstances, and factors that might suggest a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Wilkes*, 756 N.W.2d at 842–43 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "The use of sirens, flashing lights or other signals . . . might also constitute a show of authority that is a seizure." *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981).

None of the foregoing indices of police coercion are present here. Cook maintains "Steffen honking his horn and waving Cook over was not a request that could be ignored—this was an order" and a reasonable person would not feel free to go about his or her business. But our supreme court has recognized "that one of the norms of society we have grown up with is that we should cooperate with law enforcement." *Fogg*, 936 N.W.2d at 669. We assume Cook was operating under that norm, but "for a seizure to occur, there must be more—'objective indices of police coercion,' '[t]he elements of coercion,' or 'coercive or authoritative behavior.'" *Id.* (quoting *Wilkes*, 756 N.W.2d at 843, 844). That question turns on "whether the officer was simply engaging in activity that any *private* person would have a right to engage in." *Id.* Any private person—whether a family member, friend, acquaintance, or stranger—could have pulled alongside Cook's truck, honk at him to get his attention, and wave him over to converse about any number of topics. Steffen was alone, did not activate his overhead lights or sirens, and did

not employ an aggressive tone or gestures. He did not pursue Cook or even get out of his vehicle, at least until after he detected the odor of alcohol. He merely honked at Cook and motioned him over, which we do not find coercive in nature. *Cf. People v. Guzman*, 166 Cal. Rptr. 633, ___ (Cal. Ct. App. 1980) ("To equate mere looking at or speaking to a possible candidate for 'seizure,' or the driving of a police car to the curb adjacent to where a lone man is walking, or the honking of a horn to attract a person's attention, or the motioning to a stranger requesting him to come to the curb, without more, with an 'arbitrary and oppressive interference with the privacy and personal security of the individual,' is mere sophistry."). Absent objective indices of police coercion prior to Steffen detecting an odor of alcohol, no seizure occurred until after Steffen had a valid basis to detain Cook. We affirm the district court on this point.

B.      Iowa Code section 804.20

Next, Cook challenges the district court's denial of his motion to suppress on the basis that his statutory rights under Iowa Code section 804.20 were violated. "We review a district court's interpretation of Iowa Code section 804.20 for errors at law." *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019) (quoting *State v. Lamoreaux*, 875 N.W.2d 172, 176 (Iowa 2016)). "We will affirm a district court's ruling on a motion to suppress when the court correctly applied the law and there is substantial evidence to support the court's fact-finding." *State v. Lyon*, 862 N.W.2d 391, 394 (Iowa 2015).

Iowa Code section 804.20 provides:

Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at

the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

To determine whether Cook was denied his right to consultation under section 804.20, two distinct inquiries are required—(1) whether Cook invoked his rights under section 804.20 and (2) whether he was provided a reasonable opportunity to exercise those rights. *See State v. Hicks*, 791 N.W.2d 89, 94, 96–97 (Iowa 2010). We assume Cook's various suggestions of making phone calls to an attorney amounted to invocation. *See id.* at 95 ("[W]hen a suspect 'restrained of [his] liberty' makes a statement that can reasonably be construed as a request to communicate with . . . an attorney, the suspect has invoked his section 804.20 right to communicate with . . . counsel." (second alteration in original)). But at every such suggestion, Steffen advised Cook he could call an attorney. In fact, Cook was allowed an opportunity to call anyone he wanted. Cook never followed through. Upon Cook's advisement that his wife needs him, Steffen asked if Cook would like to call her. Cook responded in the negative. We find Steffen provided Cook several reasonable opportunities to exercise his rights and the statute was not violated. To the extent Cook argues Steffen knew Cook's wife was at the jail and wanted to speak with him—which Steffen denied in his testimony—and Steffen was required to advise Cook of the same, we are unconvinced the statute contemplates invocation of 804.20 rights to be made by anyone other than the

arrestee.  Either way, he was given a reasonable opportunity to make contact with his wife prior to submitting to testing, which is all that is required.

C.      Implied-Consent Procedure

Third, Cook argues the implied-consent procedure employed by Steffen was not in compliance with Iowa Code section 321J.6(1).  He complains he provided his chemical-breath-test sample before signing his consent on the implied-consent-advisory form.  Our review is for legal error, and we will "affirm if the district court's ruling correctly applied the law and substantial evidence supports its fact findings."  *See State v. Frescoln*, 911 N.W.2d 450, 453 (Iowa Ct. App. 2017).

To support his argument, Cook relies on selective language from our supreme court's ruling in *State v. Fischer*, that "[t]he request itself . . . is statutorily required to be in writing and signed by the driver prior to the administration of the test."  785 N.W.2d 697, 705 (Iowa 2010).  But the only issue presented in that case was "whether a law enforcement officer can use a computer screen to make a 'written request,' to withdraw a bodily substance from a driver expected of operating while intoxicated."  *Id.* at 698.  The issue of whether the request must be signed prior to testing was "not essential to the decision and therefore not binding." *See Black's Law Dictionary*, *Judicial Dictum* (11th ed. 2019).  The court went on to explain that the written request need only exist in writing.  *See Fischer*, 785 N.W.2d at 705, 706.  That explanation is in accord with the plain language of section 321J.6(1), which states, "The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was" OWI and any one of numerous

conditions applies. The statute does not require the written request be signed by the arrestee, and "[w]e do not read a requirement into a statutory scheme when none exists because '[i]t is not our province to write such a requirement into the [implied consent] statute." *Id.* at 705 (second and third alterations in original) (citation omitted). We affirm the district court on this point.

D. Ineffective Assistance of Counsel

Cook claims his attorneys were ineffective in various respects.[6] Appellate review of claims of ineffective assistance of counsel is de novo. *State v. Gordon*, 943 N.W.2d 1, __ (Iowa 2020). To succeed on his ineffective-assistance-of-counsel claims, Cook must establish "(1) that counsel failed to perform an essential duty and (2) that prejudice resulted." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

1. *Speedy-trial waiver*

First, Cook claims his first attorney rendered ineffective assistance of counsel in waiving his ninety-day speedy-trial right without authority. But our supreme court has explained "an attorney is an agent of limited authority . . . and generally a defendant is bound by defense counsel's action within the scope of

---

[6] Effective July 1, 2019, section 814.7 was amended to prohibit claims of ineffective assistance of counsel to be raised or decided on direct appeal. 2019 Iowa Acts ch. 140, § 31. Because judgment and sentence were entered prior to the statutory amendments effective date, it does not apply to Cook's direct appeal. *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019).

that authority taken on behalf of the defendant." *State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981). The right to a speedy trial within ninety days

> is not a personal right that can be waived only by the defendant. Defense counsel acting within the scope of his or her authority may waive this right on the defendant's behalf without the defendant's express consent.

*Id.* In the present case, as in *LeFlore*, "defense counsel expressly waived defendant's right to a speedy trial; counsel also waived this right by the succession of continuance motions. Defense counsel's action was within the scope of his authority, and the delay caused thereby was in no way attributable to the State." *Id.* Relying on *LeFlore*, we have frequently noted waiving the right to speedy trial is within the authority of defense counsel. *See, e.g.*, *Blomdahl v. State*, No. 18-0484, 2019 WL 2374398, at *4 (Iowa Ct. App. June 5, 2019); *State v. Meyer*, No. 14-0661, 2015 WL 408112, at *2 (Iowa Ct. App. Jan. 28, 2015); *State v. Leyja*, No. 10-0040, 2010 WL 3503459, at *2 (Iowa Ct. App. Sept. 9, 2010). Because counsel acted within the scope of his authority, we find no breach of an essential duty and counsel was not ineffective as alleged.

### 2. *Stipulation to admissibility of evidence*

Cook claims his fourth attorney was ineffective in stipulating to the admissibility of certain evidence in conjunction with the bench trial. He complains the audio recording of the 911 call was hearsay and unauthenticated, foundation was not laid for it, and it contained the prejudicial statement that "[h]e's hammered." The hearsay challenge is easily overcome by the fact that the caller's statements amounted to present-sense impressions and are therefore not excluded by the rule against hearsay. *See* Iowa R. Evid. 5.803(1). As to the foundation and

authentication challenges, Cook ignores that the substance of the audio recording was also included in the minutes of evidence, the stipulation to which he does not challenge. We find Cook was not prejudiced. *See State v. McCollom*, 151 N.W.2d 519, 522 (Iowa 1967) ("It is elementary that admission of evidence is not prejudicial [ ] where substantially the same evidence is in the record without objection."). On the prejudice piece, even if the statement that "[h]e's hammered" was not before the court, we find no reasonable probability of a different outcome. The evidence of OWI was overwhelming. Cook smelled of alcohol, he performed poorly and was unable to follow instructions during field-sobriety testing, and he provided a chemical-breath-test sample well over the legal limit. We find Cook was not prejudiced by the admission of the 911 call, and counsel was not ineffective as alleged.

Lastly, Cook complains of counsel's stipulation to the admission of "statements made by [him] prior to being given his *Miranda* warnings." While he does not pinpoint what statements he is referring to, he later notes "[t]he statements [he] made when he was detained by Sergeant Steffen were not voluntary, but instead were a result of a police officer interrogating him in order to gain evidence for a criminal prosecution." He later references his "statement that he had consumed alcohol earlier that evening." We assume he is referring to the fact that he admitted to consuming "one beer." We agree with the State that Cook was not in custody at the time he made the statement shortly after the beginning of his encounter with Steffen, raising a *Miranda* challenge would have been meritless, and counsel was not ineffective in failing to pursue it.

**III.    Conclusion**

We affirm the denial of Cook's motion to suppress and find Cook's attorneys were not ineffective as alleged.  We affirm Cook's conviction of OWI.

**AFFIRMED.**